SARTAIN, Judge.
Plaintiff Romero sustained personal injuries as the result of an explosion and fire on March 16, 1966. He was attempting to pour gasoline into the carburetor of defendant Trahan’s 1959 Oldsmobile automobile, which had run out of gas, when Trahan turned on the ignition and the explosion and fire followed. Also named as a defendant was Trahan’s automobile insurer, New York Fire and Marine Underwriters, Inc.
The defendant insurer denies liability on the grounds that the policy covers only those persons who are injured while “occupying” the insured vehicle. Occupying, as defined in the policy, means “in or upon or entering into or alighting from” the vehicle and it was alleged that Romero was merely standing in front of the automobile with both feet on the ground prior to and at the time of the accident.
Defendant Trahan asserts, first, his freedom from negligence and, in the alternative, Romero’s contributory negligence in assuming the risk of a known danger.
Romero, in response to the affirmative defense, alleges that Trahan nevertheless had the last clear chance to avoid the accident.
*269 The trial judge found in favor of both defendants and dismissed plaintiff’s suit, without providing written reasons (or recorded oral reasons) for his decision. It is clear that the judge did not have to consider the insurer’s defense under the policy language. The dismissal of the suit as to the insured Trahan, whether from a finding that he was not negligent or from a finding that Romero and Trahan were both negligent, would also operate to release the defendant insurer. It is also evident that the judge resolved any conflict in the details of the testimony of the parties in favor of defendant Trahan, if it was necessary to do so in reaching his ultimate decision.
The record reveals that Romero and Trahan were employed by Loomis Hydraulic, Inc., in Terrebonne Parish and at 6:00 P. M. on the day of the accident they were preparing to leave work. Trehan discovered that his car was out of gas and asked Romero to help him get it started. They obtained a five-gallon can of gas and poured most of it in the gas tank, saving a small quantity in a one-quart plastic container to pour into the carburetor. Trahan then pumped the accelerator and tried the ignition but the car would not start. They raised the hood of the car, which hinged at the rear of the engine near the windshield, and discussed pouring the gas into the carburetor. It was agreed that because of the danger of a backfire it would be safer to leave the air filter on and to try to pour the gas through it rather than directly into the carburetor. The record leaves no doubt that both men were sufficiently familiar with the mechanics of an automobile engine to understand and be aware of the danger of a backfire and fire.
At this point, Romero and Trahan gave conflicting accounts of the events leading up to the accident.
Plaintiff Romero testified that they were unable to pour any gas through the air filter because of the small distance between the top of the filter and the hood, so Tra-han removed the filter and poured gas directly into the carburetor. Trahan than got in the car and tried the ignition but to no avail. Romero said he then attempted to pour some more gas without telling Tra-han about it, while Trahan was still in the driver’s seat. The ignition clicked and the explosion occurred. He said that no verbal or other warnings were exchanged between them at any time.
Defendant Trahan testified that they were able to pour some gas through the filter but the car would not start, so he removed it and asked Romero to pour some directly into the carburetor. The car still would not start, so Trahan again got out of the car and poured some more gas into the carburetor. Trahan said that on all three occasions, before he got back in the car to try the ignition, he said, “watch yourself, Wes,” or some similar expression of warning, and that Romero took a step or two back from the front of the car. Trahan said that he tried the ignition again and, although the raised hood blocked his view to the front, Romero must have moved in to pour some more gas when the explosion occurred and Romero’s clothes caught fire. After Trahan had sprayed him with a nearby hose, he said he asked Romero what had happened and Romero answered that he had seen the motor start and die and that he thought it would help to pour more gas. Trahan quoted himself as saying, “For Christ’s sake, Wes, you know better than that,” and Romero as saying again, “I thought it would help.” Romero denied that this exchange took place.
Both men were obviously aware of the possible hazard. If the trial judge accepted Trahan’s account, including his verbal warnings before he entered the car to try the ignition, a finding that Trahan took the necessary precautions and was free from negligence would be justifiable. Even if Romero’s testimony is accepted as more accurate, it is clear that he exposed himself to a known risk and that for his own protection he was bound to let Trahan *270 know where he was and what he was planning to do, especially since Trahan was in the car for the purpose of trying the ignition and his view to the front was blocked by the raised hood. The argument that Trahan controlled a dangerous instrumentality and should be held to a very high degree of care does not operate to relieve Romero of all responsibility for his own safety.
Romero’s failure to establish any plan or communication with Trahan under these circumstances constituted contributory negligence on his part and under this theory the dismissal of his action by the trial judge is also justified.
Plaintiff lastly contends that Tra-han had the last clear chance to avoid the accident, even if it is conceded that Romero had been guilty of negligence. The elements of the last clear chance doctrine must be proven by the party alleging its application. Those elements have been firmly established in recent jurisprudence:
(1) the person involving the doctrine admits negligence and is in a position of peril of which he is not aware or from which he is unable to extricate himself;
(2) the person against whom the doctrine is invoked actually discovered or, by the exercise of reasonable care, should have discovered the peril; and
(3) at the time of the actual or constructive discovery of the first person’s peril, the other person could have avoided the accident.
See Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968).
In this case, Trahan certainly could have avoided turning the ignition key if he had known that Romero was under the hood, but we are not persuaded that he was unreasonable in failing to discover Romero’s perilous position. Trahan was convinced that Romero knew of the potential danger and that he also knew Trahan was in the car for the purpose of trying the ignition key. The raised hood blocked the view to the front. The doctrine of last clear chance cannot be invoked to transfer to Trahan the effects of Romero’s negligent acts after that point. Williams v. City of Baton Rouge, supra.
Under either approach, we are of the opinion that the result reached in the lower court is not manifestly erroneous and for the above reasons that judgment is affirmed, at plaintiff-appellant’s costs.
Affirmed.